**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:12-cv-305-RJC**
**(3:07-cr-154-RJC-DSC-2)**

| | |
|---|---|
| KATHLEEN GIACOBBE, | ) |
| | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | )    **ORDER** |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

THIS MATTER is before the Court on Petitioner's Motion to Vacate, Set Aside, or

Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Motion

for Summary Judgment, (Doc. No. 8).

**I.      BACKGROUND**

**1.  Offense Conduct**

From 2003 to 2006, pro se Petitioner Kathleen Giacobbe owned and operated the website

www.youronlinedoctor.com ("YOD") from her home in Lyndonville, Vermont.  See (Criminal

Case No. 3:07cr154, Doc. No. 336 at 4: PSR; Doc. No. 360 at 1: Gov't Sentencing Memo.).

Giacobbe hired Porfirio Orta-Rosario, a medical doctor, to serve as YOD's "managing

physician" from his home in Oshkosh, Wisconsin.  See (Criminal Case No. 3:07cr154, Doc. No.

336 at 4: PSR; Doc. No. 360 at 3: Gov't Sentencing Memo.; Doc. No. 3 at 4: Sealed Indictment).

YOD advertised itself as an online, medical consultation service that provided patients with a

1

doctor's consultation for non-life-threatening medical problems.  See (Id., Doc. No. 336 at 4;

Doc. No. 360 at 2).  YOD was, in fact, a massive distributor of Schedule III and IV controlled

substances, including hydrocodone (e.g., Vicodin), alprazolam (e.g., Xanax) and diazepam or

benzodiazepine (e.g., Valium), based on sham prescriptions bearing Dr. Orta-Rosario's

photocopied signature and written by people who had no medical training or authority to write a

prescription.  (Id., Doc. No. 336 at 3-4).  Alvin Woody, a pharmacist and owner of Woody

Pharmacy in Mooresville, North Carolina, agreed to fill the "prescriptions" generated by YOD

without questioning their legitimacy.  (Id.).

In total, between January 2004 and May 2006, YOD employees, acting under Giacobbe's

direction, wrote 51,656 "prescriptions" for hydrocodone, resulting in more than five million

dosage units of hydrocodone being distributed to thousands of customers across the country,

resulting in at least several serious injuries and deaths.  (Id., Doc. No. 336 at 5, 7; Doc. No. 360

at 5, 6).  The operation generated $4.5 million of revenue for YOD.  (Id., Doc. No. 336 at 5).

**2. Indictment**

On July 18, 2007,  a federal grand jury in the Western District of North Carolina returned

a 102-count indictment charging Petitioner, Orta-Rosario, Woody, and two others with

conspiring to distribute Schedule III and Schedule IV controlled substances without a legitimate

medical purpose and outside the usual course of professional practice, in violation of 21 U.S.C. §

846; and numerous substantive counts of distributing Schedule III controlled substances without

a legitimate medical purpose and outside the usual course of professional practice, and aiding

and abetting the same, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2.  (Id., Doc. No. 3;

Sealed Indictment).  Petitioner and Woody were additionally charged with promotional money

laundering and aiding and abetting the same, in violation of 18 U.S.C. §§ 1956(a)(1)(A) and 2;

2

and Woody was separately charged with additional counts of promotional and transactional money laundering, in violation of 18 U.S.C. §§ 1956 and 1957.

### 3. Plea negotiations

Petitioner was offered a plea agreement in April 2008, wherein she would plead guilty to conspiracy, in violation of 21 U.S.C. § 846, and money laundering, in violation of § 1956(a)(1). See (Doc. No. 1-2 at ¶ 1: Pet. Ex. 1).  As part of the plea agreement, Petitioner would have acknowledged the maximum penalty for each offense (five and twenty years, respectively), and would have acknowledged that any sentencing agreements or recommendations made by the Government were not binding on the district court and "that the Court has the final discretion to impose any sentence up to the statutory maximum for each count."  (Id. at ¶ 6).  For its part, the Government would have agreed to recommend an adjusted offense level of 25 (which, with a criminal history category I, yielded an advisory range of 57 to 71 months) and to recommend the low end of that range.  (Id. at ¶ 7(a)-(f)).  Petitioner rejected this plea offer.

### 4. Trial and Sentencing

While many of the co-conspirators pled guilty, Petitioner and Orta-Rosario proceeded to trial.  Following a nine-day trial, the jury convicted Petitioner and Orta-Rosario of conspiring to distribute Schedule III and IV controlled substances and all substantive counts of distribution in which they were charged.  (Id., Doc. No. 302: Jury Verdict).  The jury acquitted Petitioner of the money laundering charges.  On May 11, 2010, this Court sentenced Petitioner to 60 months of imprisonment on Counts One, Three, Four, Five, Six, and Seven, and a consecutive term of 15 months of imprisonment on Counts 20 through 53.  (Id., Doc. No. 364: Judgment).  The Court also ordered Petitioner to pay $1,000 toward the costs of court-appointed attorney fees.  The Court sentenced Orta-Rosario to 60 months of imprisonment on each count, the statutory

maximum, to run concurrently and, over Orta-Rosario's objection, ordered Orta-Rosario to re-pay $1,000 towards the cost of court-appointed attorney fees. See (Criminal Case No. 3:07-cr-154-RJC-DSC-3, Doc. No. 366: Judgment). Both defendants timely filed notices of appeal.

**5. Appeal**

On appeal, Petitioner and Orta-Rosario challenged whether the Controlled Substances Act was impermissibly vague as applied to them, whether this Court abused its discretion in denying a motion for mistrial based on deliberate government misconduct following an unsolicited remark from a Government witness that a YOD customer had died after receiving hydrocodone from the operation, and whether this Court correctly instructed the jury on the good faith defense. United States v. Orta-Rosario, 469 F. App'x 140, 148 (4th Cir. 2012) (unpublished). Orta-Rosario separately challenged the willful blindness jury instruction, this Court's denial of a minor role reduction, and the order to re-pay court-appointed counsel fees.

In an unpublished opinion, the Fourth Circuit affirmed the convictions in all respects and affirmed Petitioner's sentence. Orta-Rosario, 469 F. App'x at 148. The Fourth Circuit affirmed this Court's denial of a role reduction for Orta-Rosario but vacated the portion of Orta-Rosario's sentence requiring the reimbursement of court-appointed counsel fees in light of the Fourth Circuit's intervening decision in United States v. Moore, 666 F.3d 313, 322 (4th Cir. 2012). Id. at 147-48. The Fourth Circuit issued its mandate on April 4, 2012.

**6. Petitioner's § 2255 allegations**

Petitioner placed the § 2255 motion in the prison mailing system on May 1, 2012, and the motion was filed in this Court on May 14, 2012. On November 28, 2012, the Court ordered the Government to respond to the motion to vacate. (Doc. No. 2). On April 12, 2013, the Government filed the pending motion for summary judgment. (Doc. No. 8). On April 29, 2013,

4

this Court entered an Order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of her obligation to file a response to the motion for summary judgment, and explaining the requirement that she present her own evidence by affidavit or unsworn declarations. Petitioner did not file a response to the summary judgment motion.

Petitioner raises two issues in her petition. First, she alleges that she was denied effective assistance of counsel when her attorney Scott Gsell advised her to reject the plea offered by the Government. Specifically, she alleges that Attorney Gsell told her "that the sentence was not mandatory," that the maximum sentence she could receive would be five years, and that she "would not be convicted at trial," and based on this allegedly bad advice, Petitioner refused the plea. <u>See</u> (Doc. No. 1 at 3-4; Doc. No. 1-1 at 4). Petitioner requests that this Court reinstate the initial plea agreement offer and sentence her to a range of 46 to 57 months. (Doc. No. 1-1 at 5). Petitioner additionally seeks relief from the Court's order requiring Petitioner to re-pay a portion of the court-appointed counsel fees. (Doc. No. 1-1 at 4). Petitioner notes that Orta-Rosario's order of reimbursement was vacated by the Fourth Circuit but that hers was not because it was not raised in her direct appeal. (Doc. No. 1 at 4; Doc. No. 1-1 at 4-5). Petitioner does not allege ineffective assistance of counsel by her appellate attorney; she merely alleges that the order of reimbursement is a "miscarriage of justice." <u>See</u> (Doc. No. 1-1 at 4).

### 7. Attorney Gsell's Affidavit

Attorney Scott Gsell provided an affidavit to the Government responding to the factual allegations raised in Petitioner's first ground for relief. <u>See</u> (Doc. No. 7-1: Gov't Ex. 1). Attorney Gsell asserts that Petitioner "maintained throughout the case that she was innocent and had done nothing wrong or illegal." <u>See</u> (<u>Id.</u> at ¶¶ 7-11). In his affidavit, Gsell provides specific examples in which he discussed with Petitioner the evidence against her and possible resolutions

of her case, only to be rebuffed by Petitioner's insistence on her innocence. For example, Attorney Gsell relays that on July 16, 2008, he sent Petitioner a copy of the proposed plea agreement and advised her that the plea would subject her to a sentencing range of 57 to 71 months. (Id. at ¶ 8). But, according to Attorney Gsell, Petitioner "stated that she was innocent and could not, nor would not, accept any plea that required jail time." (Id.) (emphasis added). In October 2008, Attorney Gsell and Petitioner discussed the plea agreements that co-defendants Alvin Woody and Stephen Petitioner had entered into with the Government, including how much jail time each faced, but Petitioner "again stated that she was innocent and could not, nor would not, accept any plea that required jail time." (Id. at ¶ 9).

Attorney Gsell also states that he and Petitioner discussed the evidence against her "numerous times during the period that [he] represented her," including in June 2009 when Attorney Gsell traveled to New Hampshire to meet with Petitioner in person. (Id. at ¶ 10). They spent approximately nine hours reviewing the evidence and discussing its "possible bearing on the jury's verdict." (Id.). At the end of the meeting, however, Petitioner again stated "that she was innocent and could not, nor would not, accept any plea that required jail time." (Id.).

Attorney Gsell finally recounts a final plea-discussion that he had with Petitioner in August 2009, just before trial, when Petitioner instructed Attorney Gsell to contact the Government concerning a possible plea. (Id. at ¶ 11). The Government informed Attorney Gsell that Petitioner would have to plead to all of the charges in the indictment. (Id.). Attorney Gsell informed Petitioner of the Government's response, and Petitioner responded that "she could not do jail time and would take the case to the jury." (Id.).

II.     STANDARD OF REVIEW

A. Section 2255

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. If a petitioner's motion survives initial review and once the Government files a Response, the Court must then review the materials submitted by the parties to determine whether an evidentiary hearing is warranted under Rule 8(a) of the Rules Governing Section 2255 Proceedings. After having considered the record in this matter, including the parties' summary judgment materials, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

B. Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

III. DISCUSSION

A. **Ineffective Assistance of Counsel Based on Counsel's Advice Regarding Petitioner's Plea**

In her first ground for relief, Petitioner contends that she received ineffective assistance of counsel based on counsel's advice regarding the Government's plea offer. The Sixth

7

Amendment to the U.S. Constitution guarantees that in all criminal prosecutions the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced Petitioner. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

The two-part Strickland v. Washington test applies to ineffective assistance of counsel claims arising out of the plea-bargaining process. See Missouri v. Frye, 132 S. Ct. 1399, 1386-87 (2012); Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012); Hill v. Lockhart, 474 U.S. 52, 58 (1985). In Frye and Lafler, the Supreme Court recently examined the application of the Strickland test in the plea-bargaining process. The Court held in these companion cases that counsel's failure to communicate a formal plea offer to his client constitutes deficient performance as a matter of law. Furthermore, to establish prejudice the defendant has to show "not only a reasonable probability that he would have accepted the lapsed plea but also a reasonable probability that the prosecution would have adhered to the agreement and that it

8

would have been accepted by the trial court." Frye, 132 S. Ct. at 1410-11.

As noted, Petitioner alleges in her petition that she was denied effective assistance of counsel when Attorney Gsell advised her to reject the plea offered by the Government. Specifically, she alleges that Attorney Gsell told her "that the sentence was not mandatory," that the maximum sentence she could receive would be five years, and that she "would not be convicted at trial," and based on this allegedly bad advice, Petitioner refused the plea. See (Doc. No. 1 at 3-4; Doc. No. 1-1 at 4). Petitioner's first ground for relief fails because she has neither alleged nor presented evidence on summary judgment showing that she would have pled guilty but for Attorney Gsell's alleged poor advice regarding whether to plead guilty. See Lafler, 132 S. Ct. at 1385 (stating that a petitioner "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea . . ."). Petitioner's failure to allege that she would have pled guilty but for counsel's allegedly poor advice is consistent with Attorney Gsell's statements in his affidavit that Petitioner maintained her innocence throughout his representation of her. Attorney Gsell states in his affidavit that, after discussing with Petitioner possible resolutions of her case and the evidence against her in July 2008, October 2008, June 2009, and August 2009, Petitioner consistently maintained her innocence and consistently refused to accept any plea that required jail time. Petitioner has presented no evidence in response to the Government's motion for summary judgment. Here, the only evidence presented on summary judgment shows that the decision to reject a plea offer was Petitioner's, based on her claimed innocence and not, as she now claims, based on Attorney Gsell's allegedly deficient advice. Petitioner is obviously dissatisfied with the fact that she ultimately received a sentence that was longer than the sentence she would have received had she accepted the Government's

9

plea offer. She has failed, however, to meet the evidentiary burden required to show ineffective

assistance of counsel under Lafler. Accord Diaz v. United States, 930 F.2d 832, 835 (11th Cir.

1991) ("Given appellant's awareness of the plea offer, his after the fact testimony concerning his

desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or

inaction, he would have accepted the plea offer.") (citing Johnson v. Duckworth, 793 F.2d 898,

902 n.3 (7th Cir. 1986)).

In sum, Petitioner's first claim is without merit.

**B. Order to repay $1,000 of court-appointed counsel fees**

In her second claim for relief, Petitioner contends that this Court's order to re-pay $1,000

of her court-appointed counsel fees was unconstitutional and that she is therefore entitled to

relief in the form of an amended judgment deleting the requirement of repayment. Petitioner's

claim fails because it is not cognizable on collateral review. Section 2255 provides as follows:

> A prisoner in custody . . . claiming the right to be released upon the ground that
> the sentence was imposed in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to impose such sentence, or that
> the sentence was in excess of the maximum authorized by law, or is otherwise
> subject to collateral attack, may move the court which imposed the sentence to
> vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Petitioner's challenge to the reimbursement order does not claim a right to

be released and fails for this reason alone. It additionally fails because it is not based on a

constitutional or jurisdictional error, as United States v. Moore, 666 F.3d 313, 323-24 (4th Cir.

2012), is premised on the interpretation of the Criminal Justice Act statute, rather than the

Constitution. Furthermore, this Court's modest reimbursement order did not result in a

"complete miscarriage of justice," as would be required to warrant relief under § 2255. See

United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (holding that a "collateral attack on a final

judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice'"). Thus, Petitioner's second ground for relief also fails.

## IV.    CONCLUSION

For the reasons stated herein, the Court will dismiss the § 2255 petition and grant Respondent's motion for summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1.    Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2.    The Government's Motion for Summary Judgment, (Doc. No. 8), is **GRANTED**.

3.    Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: September 1, 2015

Robert J. Conrad, Jr.
United States District Judge